UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANGERINE WILLIAMS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 2:25-cv-02889-DJC-CSK (SS)<br>FINDINGS & RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 9, 13) |

Plaintiff Tangerine Williams seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends Plaintiff's motion be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

/ / /

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. *See* Local Rule 304.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On March 25, 2022, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning on January 19, 2022, due to blindness in her left eye, hardness of hearing in both ears, schizophrenia, bipolar disorder, and asthma. Administrative Transcript ("AT") 150-156, 177. Plaintiff's application was denied initially and upon reconsideration and she sought a review before an administrative law judge ("ALJ"). AT 74-78, 81-84, 85-87. A hearing was held on April 2, 2024, where Plaintiff appeared pro se and testified about her impairments, and a

vocational expert ("VE") testified about hypothetical available jobs in the economy. AT 38-62.

On November 26, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 19-33. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 8, 2022. AT 24-25. The ALJ examined reports that Plaintiff had stopped working because of her conditions on February 4, 2022. AT 25 (citing AT 176-181). While the ALJ found Plaintiff's earnings through the first quarter of 2022 appeared to be substantially gainful, he concluded that no further investigation was needed because "the earnings did not continue throughout the relevant period and a finding of substantial gainful activity is not material to the findings of disability." *Id*.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: left eye blindness, hearing loss, schizophrenia, schizoaffective disorder, trauma related disorder, and asthma. *Id*. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that equal the severity of any listing. *Id*. (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered the following listings for Plaintiff's physical symptoms: 2.02 (Loss of central visual acuity), 2.10 (Hearing loss not treated with cochlear implantation), and 3.03 (Asthma). *Id*. For Plaintiff's mental symptoms, the ALJ evaluated listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar, and related disorders), and 12.15 (Trauma and stressor-related disorders). *Id*. The ALJ examined the "Paragraph B" and "Paragraph C" criteria for Plaintiff's mental impairments.[2] *Id*. The ALJ concluded that

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

Plaintiff had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting or maintaining pace, and for adapting or managing oneself. AT 26. The ALJ concluded that the "Paragraph B" criteria was not satisfied because Plaintiff's mental impairments did not cause at least two "marked" limitations. *Id*. Further, the ALJ concluded that the Paragraph C criteria was not satisfied because the evidence did not show the disorder lasted over two years with ongoing medical treatment or that Plaintiff has a minimal capacity to adapt to changes in his environment or that are not already part of her daily life. AT 26-27.

The ALJ next found that Plaintiff had the residual functional capacity to perform medium work except:

> No climbing of ropes, ladders, or scaffolds; frequently climb stairs and ramps; no unprotected heights; moving mechanical parts or driving of motor vehicles; avoid concentrated exposure to humidity, wetness, extreme cold, extreme heat, dust, chemicals, fumes, odors, and noise above the moderate level; can perform simple, repetitive tasks; occasional interactions with the public, coworkers, supervisors, but no tandem/team work tasks; can adapt to simple changes; can perform tasks that do not require binocular vision – can perform tasks with a patch over one eye.

AT 27. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with objective medical evidence," medical opinion testimony, and prior administrative medical findings. *Id*.

Evaluating the medical opinions, the ALJ concluded that the medical opinion testimonies of Dr. Mary Schwieters, M.D., Dr. Katharine Lacefield, Ph.D., and Dr. Corey Montoya, PsyD, were persuasive. AT 30-31. The ALJ found the opinion testimony of Dr. Shahid Ali, M.D., was unpersuasive. AT 30-31

Dr. Schwieters completed a medical statement of Plaintiff's ability to do physical work-related activities on September 12, 2024, in response to a medical interrogatory requested by the ALJ, finding that Plaintiff suffered from asthma, left eye blindness, and right ear hearing loss. AT 464-475, 505-515. Dr. Schwieters also opined that Plaintiff

could occasionally lift and carry up to 50 pounds and could sit, stand, and walk eight hours each in an eight-hour workday. *Id*. Plaintiff was found to have no upper extremity limitations and could frequently "climb ramps and stairs and never climb ladders, ropes, and scaffolds." *Id*. The doctor opined that Plaintiff "should avoid unprotected heights, moving mechanical parts, operating a moving vehicle, humidity and wetness, dust, extreme cold, extreme heat, and other pulmonary irritants." *Id*. Plaintiff was also found to tolerate moderate noise. *Id*. The ALJ found this opinion persuasive because Dr. Schwieters performed an independent review of the available records and cited specific findings and exhibits when discussing her limitations. AT 31 (citing AT 505-515).

Dr. Lacefield completed a medical statement of Plaintiff's ability to do mental work-related activities on September 11, 2024, also in response to a medical interrogatory requested by the ALJ, finding Plaintiff had the impairments of schizophrenia spectrum disorder, depressive and trauma disorders. AT 476-486, 487-496. Dr. Lacefield also concluded that Plaintiff had mild limitations in understanding, remembering, or applying information and in concentration, persistence or pace. *Id*. The doctor found Plaintiff had moderate limitations in interacting with others and managing oneself. *Id.* Dr. Lacefield further found that Plaintiff may have occasional or moderate impairment in her ability to get along with coworkers and supervisors, respond appropriately to changes in a routine work setting, and can complete a normal workweek. *Id*. The ALJ found this opinion persuasive because the opinion was supported by an independent review of available records and specific citations to findings in the record. *Id*. (citing AT 487-496). Additionally, the ALJ found Dr. Lacefield's opinion was consistent with Dr. Montoya's opinion, as described below. *Id*.

Dr. Montoya performed a consultative examination on Plaintiff on June 30, 2024, and found Plaintiff had moderate impairments in her ability to "sustain concentration, attention, and persistence and maintain adequate social interactions." Otherwise, Dr. Montoya opined Plaintiff had mild to no impairments. *Id*. (citing AT 439-451). The ALJ found this opinion persuasive because it was supported by the ALJ's prior findings and

observations on direct examination.

Dr. Ali performed a consultative examination on Plaintiff on August 1, 2024, finding that Plaintiff could perform light work. AT 452-463. The ALJ concluded that this opinion was not persuasive because Dr. Ali's opinion was based on a brief evaluation that did not include an assessment of Plaintiff's mental impairments. *Id*.

Based on the RFC, the ALJ concluded that Plaintiff was capable of performing past relevant work as a cleaner, Dictionary of Occupational Titles ("DOT") #323.687-014, light, SVP 2. AT 32.[3] The ALJ made his conclusion because the work was substantial gainful activity in 2021, and that Plaintiff had previously reported that she worked as a hospital cleaner for six months in 2021, and it was not started and stopped in fewer than thirty calendar days. *Id*. (citing AT 169, 178, 46-56; 20 C.F.R. §§ 416.960(b), 416.965, 416.960(b)(1)(m)). The ALJ concluded that transferability would not be an issue for Plaintiff because the work was unskilled. *Id*. (citing 20 C.F.R. § 416.968).

At step five, the ALJ also found Plaintiff capable of performing other jobs in the national economy, including: (i) office helper, DOT #239.567-010, light, SVP 2, with approximately 215,000 in the national economy; (ii) housekeeping cleaner, DOT #323.687-014, light, SVP 2, with approximately 450,000 positions in the national economy; and (iii) mail clerk, light, SVP 2, with approximately 90,000 positions in the national economy.[4] AT 33. Thus, the ALJ concluded that Plaintiff was not disabled. *Id*.

On August 5, 2025, the Appeals Council rejected Plaintiff's appeal. AT 1-6. Plaintiff filed this action requesting judicial review of the Commissioner's final decision,

---

[3] "Medium" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c).
"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

[4] "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).

and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 11, 16.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (2) when discounting Plaintiff's subjective symptom testimony, failing to consider Plaintiff's disability in the entire relevant time period; and (3) failing to consider whether the VE testimony at step five was consistent with the DOT. Pl. Mot. at 3-10 (ECF No. 9-1).

Defendant argues that: (1) the ALJ properly evaluated Plaintiff's subjective symptom testimony; (2) the ALJ properly considered the time period at issue; and (3) substantial evidence supports the ALJ's findings at step five. Def. Mot. at 4-10 (ECF No. 13).

## IV. DISCUSSION

### A. Subjective Symptom Testimony

#### 1. <u>Legal Standard</u>

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior

inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. <u>Analysis</u>

Plaintiff alleges disability due to blindness in her left eye, hearing loss, schizophrenia, bipolar disorder, and asthma. AT 27. Plaintiff testified that she has lived in a shelter since 2023. *Id*. Plaintiff alleges her godmother helps her by giving rides, shopping, cooking meals, and arranging medical appointments. *Id*. Plaintiff testified that she is attending classes to receive her high school diploma and that she is attending school five days a week from 8:00 AM to 1:00 PM. *Id*. Plaintiff alleges she cannot work because her schizophrenia and eye issues are becoming worse. *Id*. Plaintiff testified that she cannot see out of her left eye and has had surgeries on her left eye as early as when she was three years old. *Id*. at 27-28. Plaintiff also alleges she takes Zoloft and Abilify for her mental health impairments and attends therapy to treat her PTSD twice a week. *Id*. Plaintiff testified her memory "is not good." *Id*. Plaintiff also testified that she

gets along with other students and does mostly independent study. *Id*. Plaintiff walks herself to class and walks her nine-year-old daughter to school daily. *Id*. Plaintiff testified she can use a microwave. *Id*. Plaintiff claims she has difficulty being around too many people at once and becomes overstimulated. *Id*. Plaintiff claims she cannot function due to anxiety three times a week. *Id*.

While the ALJ noted that Plaintiff's medical determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

Plaintiff argues that the ALJ erred by (1) not linking testimony he found uncredible to medical evidence in his analysis; and (2) finding Plaintiff's daily activities undermined Plaintiff's subjective symptom testimony without determining whether these activities are transferable work skills. Pl. Mot. at 3-8.

In contrast, Defendant argues that (1) the ALJ appropriately considered Plaintiff's subjective symptom testimony, finding that it was inconsistent with the objective medical evidence, that Plaintiff stopped working for reasons unrelated to her disability, and that Plaintiff's symptoms were well-controlled with routine and conservative treatment and medication; and (2) that the ALJ properly evaluated whether Plaintiff's activities of daily living undermined her testimony. Def. Mot. at 4-8.

a. *Whether the ALJ Performed an Adequate Analysis*

Plaintiff argues the ALJ's analysis discounting her subjective symptom testimony "simply summarized the medical evidence at issue," made a boilerplate statement that the record undermined Plaintiff's testimony, and "did not in any way at all link specific medical evidence to the relevant testimony." Pl. Mot. at 6. The Court disagrees.

The ALJ contrasted specific portions of Plaintiff's testimony with evidence in the record and also discounted her subjective symptom testimony with clear and convincing reasons. The ALJ discounted Plaintiff's subjective symptom testimony because he found that the record contained little to no history of treatment regarding Plaintiff's vision and

auditory impairments. AT 30. The ALJ also contrasted Plaintiff's testimony that she would miss three days per week of work due to anxiety with treatment records showing that her anxiety symptoms were controlled with medication and that her condition was stabilized. *Id*. (citing AT 321-438). Further, the ALJ concluded that Plaintiff's allegations that she could not sustain activity and attendance at work were contradicted by her own testimony of attending school five days a week and taking her daughter to school daily. AT 30. Further, the ALJ found that Plaintiff's daily activities, including caring for herself independently, caring for her daughter, attending church, and reading and following television programs without apparent difficulty support the conclusion that Plaintiff could sustain basic work activities. *Id*. (citing AT 199-210, 441, 461).

The ALJ also found that the medical record was inconsistent with Plaintiff's testimony and that her condition improved with treatment. AT 28-30. First, the ALJ concluded that Plaintiff had not sought treatment for her alleged impairments until April 4, 2023, despite alleging disability since January 2022. AT 27 (citing AT 148-149, 150-156). While Plaintiff received care in April 2022 for sexually transmitted disease testing, a concurrent mental examination showed her mental status was unremarkable. *Id*. (citing AT 260-274).

The ALJ further referenced treatment records dating between April 4, 2023 and Spring 2024, and concluded that Plaintiff's alleged impairments ameliorated and stabilized with treatment. AT 28-29. The ALJ first referenced treatment records dated April 4, 2023. AT 28. Plaintiff was treated at Wellspace Health Clinic for mood and asthma symptoms. *Id*. (citing AT 314-318). Plaintiff was assessed with a mood disorder, psychosis, and moderate asthma without complications. Plaintiff stated at her appointment she had not taken psychotropic medication in years and was started on sertraline, Abilify, and inhalers. *Id*.

The ALJ noted Plaintiff was hospitalized on April 27, 2023, and was found to have auditory hallucinations and paranoia after nearly a month's use of Abilify and Zoloft. *Id*. (citing AT 277-287, 275-276). Plaintiff's prescription of Abilify was increased and she

reported a resolution of her hallucinations and improved mood. *Id*. A physical evaluation of Plaintiff was "benign with intact visual acuity," despite Plaintiff's history of eye surgery. *Id*.

A follow-up appointment in May 2023 found Plaintiff reporting feeling "normal." She denied having anxiety attacks, and denied suicidal and homicidal ideations. AT 29 (citing AT 308-312).

The ALJ then referred to records in May 2023, where Plaintiff was evaluated for "a depressed and anxious mood and reports of paranoid delusions, hallucinations, hypervigilance, and magical thinking." *Id*. (citing AT 321-327). However, at the evaluation, the examiner noted Plaintiff appeared "alert and attentive with normal cognition and active memory." *Id*. In a report dated July 2023, Plaintiff reported complying with her medications and that her depressive symptoms had improved. AT 29 (citing AT 363-372). Plaintiff also noted at the appointment that she was able to ignore her hallucinations. *Id*.

The ALJ also referenced records showing that Plaintiff had participated in individual weekly counseling where she was taught coping skills for her anxiety. *Id*. The ALJ also referenced reports where despite some anxiety, Plaintiff reported being happy, and was "generally appropriately groomed, euthymic, cooperative, interactive, and talkative." *Id*. (citing AT 341, 344, 350, 354, 360, 364, 366, 367, 369, 373, 378, 395, 398, 399, 405). The ALJ referenced normal psychiatric findings in a March 2024 examination. *Id*. (citing AT 293-296).

Also in March 2024, Plaintiff reported that her depression and anxiety symptoms were controlled on sertraline, which she found helpful. (AT 416-427.) Plaintiff denied experiencing hallucinations and reported seeing only "occasional shadows and colors that sometimes turns into a face." *Id*. Plaintiff further denied having any delusions and her evaluator determined that her mental impairment was "stable." *Id*.

The ALJ also referenced a consultative physical examination before Dr. Ali, where Plaintiff had disclosed that she stopped working in the first quarter of 2024 because she

fractured her right ankle, not because of her alleged impairments. AT 30 (citing AT 452-463).

In sum, the ALJ concluded that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence, her symptoms were controlled with conservative treatment, improved with medication, and were contradicted by her daily activities while contrasting this evidence from Plaintiff's subjective symptom testimony. Therefore, the Court concludes that the ALJ did not err and performed adequate analysis of Plaintiff's subjective symptom testimony.

b. *Whether the ALJ Properly used Evidence of Daily Activities to Discount Plaintiff's Testimony*

Plaintiff argues that the ALJ's use of daily activities in his analysis to discount her subjective symptom testimony was not clear and convincing because (1) the ALJ's analysis does not reference specific testimony; and (2) Plaintiff's references to daily activities are generic. Pl. Mot. 6-8.

Plaintiff argues that the ALJ's use of activities of daily living may discount a plaintiff's subjective symptom testimony when "(1) the activities of daily living contradict the claimant's other testimony; and/or (2) the activities of daily living meet the threshold for transferable work skills." Pl. Mot. at 7 (citing *Orn v. Astrue*, 495 F. 3d 625, 639 (9th Cir. 2007)). Plaintiff's argument does not reference specific activities of daily living with which the ALJ relied.

As stated above, the ALJ's references to daily activities in his analysis included a conclusion that Plaintiff's prior hearing testimony of attending school five days a week and taking her child to school daily contradicted Plaintiff's testimony that she was unable to sustain activity and attendance at work. AT 30. The ALJ also found that evidence of Plaintiff's daily activities in her "ability to care for herself independently, care for her 9 year old daughter, navigate public transportation, attend school, shop, manage her finances, attend church, and read and follow television programs," evince that Plaintiff can work despite her impairments. *Id*. (citing AT 199-210, 442, 461).

"Only if the level of activity [is] inconsistent with Claimant's claimed limitations do daily activities have any bearing on Claimant's credibility." *Ferguson v. O'Malley* 95 F. 4th 1194, 1203 (9th Cir. 2024) (quoting *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998) (internal quotations omitted). The Court concludes that the ALJ properly used evidence of Plaintiff's school attendance to contradict Plaintiff's testimony that she was unable to sustain attendance at work because the activities directly contradicted Plaintiff's stated level of activity. However, the Court finds that the ALJ erred by not providing further analysis as to why the long list of daily activities contradicts specific portions of Plaintiff's subjective symptom testimony. *See Ferguson*, 95 F.4th 1203 (finding ALJ erred by not linking evidence of daily activities to plaintiff's impairments when discounting plaintiff's subjective symptom testimony).

Despite finding error, the Court concludes that the ALJ's error was harmless because "it is clear [it] did not alter the ALJ's decision." *Molina v. Astrue*, 674 F. 3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by regulation*. Here, the ALJ identified other evidence of daily activities that contradict Plaintiff's subjective symptom testimony. As stated above, the ALJ also found that Plaintiff's testimony was contradicted by the objective evidence, which included improvement with medication. The Court concludes that despite the ALJ's error, he discounted Plaintiff's subjective symptom testimony with clear and convincing evidence and recommends granting summary judgment in favor of Defendant on this issue.

**B. Proper Time Period**

1. <u>Legal Standard</u>

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnha*rt, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. *Id*.; *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2. <u>Analysis</u>

Plaintiff argues that the ALJ's analysis discounting Plaintiff's subjective symptom testimony revealed a much larger error: that the ALJ's analysis of Plaintiff's disability did not address the entirety of the relevant time period established at step one. Pl. Mot. at 8. Plaintiff draws this conclusion from a reference in the ALJ's analysis to his findings at step one, where the ALJ concluded Plaintiff had participated in substantial gainful activity in the first quarter of 2022, by stating "[t]his conclusion [that Plaintiff can sustain basic work activities] is not inconsistent with [Plaintiff's] ability to engage in substantial gainful work activity through the first quarter of 2022." *Id*. (citing AT 30).

Confusingly, Plaintiff draws the conclusion that the ALJ did not "differentiate between the disability beginning in 2022 and potentially beginning in 2023." *Id*. Plaintiff also argues that the ALJ's analysis provides "no discussion of disability beginning after

treatment begins, or when she is fully engaging with her doctors in 2023." *Id*.Thus, Plaintiff argues the ALJ has erred and remand is necessary.

While the ALJ concluded that Plaintiff participated in substantial gainful activity through the first quarter of 2022, he determined that this finding is not material to Plaintiff's disability analysis. AT 24-25. Further, the ALJ still determined that the period of disability began on Plaintiff's application date, January 8, 2022. AT 24. The Court also finds the ALJ's analysis contradicts Plaintiff's remaining arguments. The ALJ considered medical treatment records as early as April 2022 and concluded with evaluation of records as late as Spring 2024. AT 28-29. Therefore, Court finds that there is substantial evidence that the ALJ considered the entire time period at issue and recommends granting summary judgment in favor of Defendant.

**C. Step Five**

1. Legal Standard

At step five, where a plaintiff has established that they are unable to perform any past relevant work, the burden shifts to the Commissioner to demonstrate that "the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett*, 180 F.3d at 1100).

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnha*rt, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v.*

*Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. *Id*.; *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. *See Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2. Analysis

Plaintiff argues that the ALJ erred in his step five analysis by relying on the VE testimony without confirming whether the opinion was consistent with the DOT. Pl. Mot. at 8-9. Defendant counters that the ALJ properly relied on the VE testimony and confirmed with the VE that her testimony was consistent with the DOT, therefore, there was no error. Def. Mot. at 8-9.

At the ALJ hearing, the hypothetical posed to the VE by the ALJ asked whether:

> A hypothetical individual of [Plaintiff's] age, education, and past work [as a front desk clerk, DOT #238.367-038, and cleaner, housekeeper, DOT #323.687-014]… while capable of work at all physical exertional levels has the following non-exertional limitations.
>
> They need to avoid concentrated exposure to fumes, odors, dust and similar pulmonary irritants. They also need to avoid concentrated exposure to hazards such as unprotected heights, moving or heavy machinery, and this would include driving motor vehicles.
>
> In addition, such an individual mentally would be limited to simple, repetitive tasks they should have no interactions with the public. They can

> have occasional interactions with coworkers and supervisors but no tandem assignments and they can adapt to simple workplace changes…

AT 58. The VE first responded that Plaintiff would not be able to perform work as a front desk clerk, but could perform past work as a cleaner with the hypothetical profile. *Id*. As stated above, the VE concluded that Plaintiff could perform work as an office helper, routing clerk, and mail room clerk. AT 59. The ALJ then asked whether the testimony was consistent with the DOT, and the VE answered affirmatively. *Id*.

Plaintiff later raised a question regarding her alleged impairment in her eye. AT 60. The ALJ acknowledged that his hypothetical did not give Plaintiff a specific vision limit, and returned to modify his previous hypothetical, asking the VE: "[I]f I were to add a limit that the individual can only perform tasks with one eye. Or basically cover over one eye so there is one eye with vision to do those example jobs, would they still exist?" *Id*. The VE found that each of the three occupations would remain because, while acknowledging that having the use of one eye would have impacted Plaintiff's depth perception, none of the occupations required depth perception, and thus would be unaffected. AT 60-61. After the ALJ modified the hypothetical to add a vision limitation, the ALJ did not ask again whether the VE's analysis was consistent with the DOT.

Plaintiff argues this was error because the ALJ failed to ask the VE a second time, after the ALJ added a visual limitation in the hypothetical posed to the VE, whether the VE's testimony conflicted with the DOT. *See* Pl. Mot. at 8-9; *Massachi v. Astrue*, 486 F. 3d 1149, 1153-54 (9th Cir. 2007). This argument fails. The ALJ asked whether the VE's testimony conflicted with the DOT; the VE testified that it did not; in response to a concern raised by Plaintiff, the ALJ then asked a clarifying question to the VE explicitly highlighting Plaintiff's visual impairment; and the VE's subsequent analysis applied that impairment to occupations already found to be consistent with the DOT where the VE testified that each of the three occupations would remain because none of the occupations required depth perception. Therefore, the fact that the ALJ did not ask the VE a second time whether her analysis was consistent with the DOT was not error. The

Court concludes the ALJ's findings at step five were supported by substantial evidence and recommends granting summary judgment in favor of Defendant and recommends denying summary judgment for Plaintiff on this issue.

## V. CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## FINDINGS & RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 9) be DENIED;
2. The Commissioner's cross-motion (ECF No. 13) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED; and
4. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: August 14, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, will.2889.25.ss msj